21 SPECTRALYTICS, Inc. v. CORDIS Corp. v. N. Noble. Mr. Carlson. Thank you, Your Honor. May it please the Court. This is the Enhancement of Damages case, where the willfulness was based exclusively on the defendant's pre-suit conduct. The case was here earlier, and you remanded it on account of the fact that the district court judge discounted that pre-suit conduct, and on remand, the district court judge has again discounted that conduct. With respect to Noble, the Court held that it was not reprehensible for Noble to have ignored the fact, because of the fact that Noble had received an identification from its largest customer, Cordis. If Noble had investigated the patent, it might have decided not to manufacture it, in which case Cordis wouldn't have had a supplier, and there wouldn't have been any infringement. But it didn't do any investigation whatsoever, it totally ignored the patent, and there's absolutely no authority giving a party a pass on enhanced damages, because it has been indemnified with respect to actual damages by its customer. In fact, giving a party a pass on enhanced damages violates the purposes and the objectives of enhanced damage law, and we ask that the case be remanded back to the district court to consider specific enhanced damages against Noble. Now, as to Cordis, there again was a discounting of the pre-suit conduct. Here the court ordered enhanced damages of $500,000, a .02 multiplier of actual damages. Well, that amount of money does not punish Cordis, and that amount of money will not deter Cordis from doing anything at all. And it resulted from an erroneous application of several of the read factors, which we discussed in our brief, but I'd like to talk about read factor five, which is the closeness of the willfulness case. Here the district court judge did not even consider the closeness of the willfulness case. If he would have considered it, he would have looked at the evidence that caused him to say that Cordis didn't take Spectralytics seriously even until the lawsuit was filed. If he had considered that evidence, he would have considered the evidence of both objective and subjective of the reckless behavior of Cordis prior to being sued, but he didn't do any of that. Instead, what he did was to say, well, this case, when it was tried, was close, and he substituted that for looking at the closeness of the willfulness case. Now Cordis will say, well, there are plenty of cases where the court looks at the closeness of the case that's tried, and they are. And in Seagate, you distinguish between pre-suit and post-suit willfulness, and you said in the case of post-suit willfulness, a reasonable defense on the merits will tend to defeat a claim of willfulness, where the willfulness is based upon post-filing conduct. And that's because, in that case, the timeframe and the evidence are the same. In our case, the evidence was based upon pre-filing conduct, and the timeframe for that evidence is completely different for that from when the case is tried. What happened is that the case was submitted to the jury. They were given the Seagate instruction, and they were given further help, as you, Judge Newman, suggested ought to occur. Now, even if the district court erred, as you're suggesting, by considering the closeness of the case in the infringement suit, even if that's true, he went on, after he did that, probably in response to your argument, he considered the closeness of the infringement and validity cases, and then he said, finally, even if the court were to consider only the closeness of the willfulness case, the court would indeed find the willfulness case was close. And he went on for two paragraphs to explain why that is. Why isn't that clearly an alternative finding that absolutely supports his closeness of the case analysis? He did both. He didn't want to fall prey to the error on appeal that you're possibly pointing out, so he went ahead and analyzed them the other way as well. With all due respect, Your Honor, I don't think he did. What he said was, I'm going to do that. And then when he started to do it, what he said was that I'm finding that the case, when it was tried, was close. As I said, he didn't examine the evidence that caused even he to say that Cordes didn't take spectrolytics seriously until the case was filed. If he would have examined that evidence, he would have decided then whether the case was close when it was filed. If he would have examined the objective and subjective evidence prior to filing, then he would have done that. He would have considered the closeness of the willfulness case. But in that paragraph where he said, I'm going to do it, what he has said in the prior paragraphs or two is that they are bound together. He did not understand Seagate. Are you suggesting that the willfulness allegations that you made don't extend into the period of time once the litigation was filed? Oh, absolutely. What happened in this... Absolutely. Absolutely. I'm suggesting that. Or they absolutely do extend. No, absolutely. I'm suggesting that. What happened... I still don't understand whether you're answering my question yes or no because of my negative in my question. So are you saying the willfulness period... What exactly in your mind is the willfulness period of time? Prior to the filing of the case. Once the case was filed, you're not accusing any infringement that occurred after the lawsuit as being willful? That's correct. Okay. Well, so then your .002 number or whatever it is is woefully wrong, right? Because of the $22 million, when I look back at damages, most of those damages were attributed to sales that occurred after this lawsuit was filed. So if you're looking at what the multiplier is for willfulness, don't you have to look at the only damages period which is available for willfulness? Well, I respectfully disagree. Most of the damages weren't after the case was filed. Most of them were before. What is the breakdown? If you're going to come up and give us a multiplier and say the district court judge only awarded .2% enhanced damages, then don't you think the compensatory amount you're looking at ought to track exactly with the willfulness period? Well, if you take out post-filing, maybe it'll go to .3. Most of the damages were pre-filing damages. But they continued the activity, did they not? Yes, they did. Yes, they did. I'm trying to understand why one would draw the line that we're discussing. Well, I'll tell you why. The jury was given the Seagate instruction. And they were told that as a part of that, they should examine the objective and subjective evidence considered from the perspective of a reasonable person in the defendant's position acting in accordance with fair standards of commerce. And the first thing they did was they sent a note back to the judge. And they said, when do I do this? When do I look at whether this person is reasonable? And they suggested five different times. The judge called the lawyers up and spoke by telephone. And we told the judge it ought to be the time prior to the filing of the case. So the judge then went back to the jury and gave them an instruction that said that the willfulness period in this case is prior to the filing of the case. Willfulness was based exclusively on that time frame. This is discussed, I think, at the very beginning of our reply brief. We get into the facts relating to this. As far as that jury instruction, you'll find that at appendix 329 and 1297. So the point is that the closeness of the case had nothing to do with the willfulness. They were two different time frames. And the problem with what the district court judge has done, and the effect of that, is that it will encourage defendants like Cordes to recklessly disregard the rights of others because they know two things. One, if they do that, a lot of these people will go away. Spectralytics was a $2 million a year in sales company. Cordes was a $50 billion a year in sales company. When Cordes said to Spectralytics, no problem here, guys, and they totally ignored the patent, most companies like Spectralytics would have walked away and Cordes would have ended up stealing their intellectual property. The second thing that they know, based upon what the judge has done here, is that if they are ever sued by the Spectralytics of the world, if they're tagged with willful infringement, they can escape enhanced damages by showing that they're putting together a close case on the merits. And I'll guarantee you that a $50 billion a year company can do that. They can make a case look close. In fact, in this case, they brought together 15 very fine lawyers, and their mere gravitas caused our district court judge to believe that this case was close. But it wasn't close. It was not a close case. A case is not close on the merits where, on validity, one of the elements of the invention is not even in the prior art. And the defendant's expert testifies that the prior art teaches away from the invention. And a case is not close on the merits on non-infringement, where your non-infringement argument defies common sense. It defies common sense for them to try to tell the jury that a tube that fits within a bushing is not smaller than the bushing, despite the fact that the tube fits in there, slides, and turns in the bushing. But the judge fought their argument that the case was close. And even analyzing whether the case was close, it's very interesting to see what he relied upon. He said the case is close. It's evidenced by the fact that I would have decided it the other way. That's not evidence. Evidence is the prior art, secondary considerations, et cetera. So the closeness of the case is not something that merges their benefits. And with respect to Read Factor V, it should not have been considered because it involves a different time frame altogether. Was the closeness of the case adjudicated in the previous appeal? Well, not specifically. I think that there are many things that were decided that inform us on that point. On our previous decision, actually, you challenged that in your cross-appeal, I believe, expressly. I know you did. Yes, we did allude to that. But I don't think that this is... You have a separate section in your brief. Yes, we said there that the case was not close. I don't think that this court weighed in on that. Okay, let's hear from the other side, Mr. Carson. All right, thank you. Okay, Mr. Galertner, you're sharing your time. I am sharing my time. I'll be nine minutes for Cordis, and then Mr. Niehaus will have the other six minutes, Your Honor. This is the second time this case is in front of this court on the issue of willfulness. The first time, the district judge had discounted the secondary factor, which involves consideration of the patent in suit, and this court held that it was error to discount that factor, that that factor cannot be ignored, and that the determination of willfulness depends on the egregiousness of the defendant's conduct in light of all the facts and circumstances. The case was then remanded, and on remand, the district court did exactly what this court said it should do. The district court considered the egregiousness in light of all the facts and circumstances. It awarded $500,000. It changed the result. The earlier appeal, there had been no award at all, and in the second appeal, the court awarded $500,000 because it was now explicitly, although Mr. Carlson says that, the district court did not consider factor number two. The district court said exactly the opposite at 8-5. He said he was considering every factor without discounting any of them, and considering all the factors, the district court determined, and again, I'm quoting the district court at 8-12, that Cordes' conduct was not particularly egregious, so that an adequate sanction was $500,000. The reason the court determined that sanction, that that result rested heavily on the court's views as to the closeness of the case, and before I get to the closeness of the case, I would just like to touch briefly on one other issue, which relates to Spectralytics' assertion that Norman Noble got a free pass. That's what I heard Mr. Carlson say in his argument, that Norman Noble was given a free pass. Norman Noble didn't get a free pass. This is something Mr. Niehaus is going to be addressing, but the court's opinion is clear. When the judge uses the term Cordes in his opinion, he states in footnote one on page A-2 that he's using the term Cordes to refer to both defendants, so that when he imposes an award of $500,000 on Cordes, that is an award on both defendants. That's confirmed by the judgment, which gives Spectralytics $500,000 for defendants, as apostrophically plural misconduct. Nobody got a free pass. The determination that Cordes' conduct was not particularly egregious on this record was amply supported by the facts, and certainly a permissible exercise of the district judge's discretion. The judge sat through pretrial proceedings, presided over the trial, and after doing so, was of the view that Cordes had presented strong defenses both on infringement and on willfulness. And there's no basis for challenging that termination. The challenge that Spectralytics offers is basically based on two arguments. Their first argument is a legal argument, the argument that the willfulness determination... I'm sorry... that the determination of closeness of the case only relates to willfulness, not a determination of the merits. And I think that argument fails for three reasons. First, it fails because, as Judge Moore noted, this judge expressly considered not only the closeness of the case on infringement and the closeness of the case on willfulness, he also considered the closeness... I'm sorry, the closeness of the case on infringement and validity, he also considered the closeness of the case on willfulness, and he expressly found, at pages 812 and 815, that this was a very close case, not only on infringement, but also on willfulness. And that determination is, frankly, unassailable. The argument that a district judge should not consider the merits issues on willfulness and infringement has two basic problems. Let me tell you my problem with the case. Sure, sure. Having said on the prior one, I didn't think it was close on infringement, but the district judge did. The district court therefore announces that there will be a very modest penalty because of the way he sees the case. And I've been arguing with myself as to the amount of deference. Is that entitled to total deference as a matter of discretion? If I could just... One point, Your Honor. Your Honor could not have reached a view on infringement that the infringement case was not close because infringement was not subject to the prior appeal. We didn't appeal the infringement issue. We had a limited number of issues to appeal. The issue of validity. And first of all, there are two issues that he decided were close issues after hearing all the evidence that were both close. This court does not make it... This court has repeatedly recognized that the determination of whether an issue is close or not is a determination that's best suited for the district court to make. My inquiry was related really to the amount of deference. Is this a matter of total deference? It's substantial evidence. This court has repeatedly held, Amstead and other cases, that the judge's determination on the closeness of the case is entitled to deference, and that's based on the fact that the judge sits in court and observes the demeanor of the witnesses. This court doesn't. And so the review of the district court's determination on there being a close case on willfulness... I'm sorry, on invalidity, is something that's only reversible for clear error. And there is only clear error if there's only one permissible view of the evidence. If reasonable fact-finders could view the evidence two different ways, then as a matter of law, that is not clear error. So while Your Honor might and has told me you do view the evidence differently than the district judge, that's not enough to overturn the district judge's ruling. You'd have to come to the conclusion that no reasonable person could reach the conclusion that the district judge reached. If a reasonable person hearing that evidence could find that there was a strong case on validity, a case that would have persuaded a reasonable fact-finder... Aren't you describing the substantial evidence standard, not the clear error standard? The clear error standard has been described by appellate courts and Supreme Courts as if there are two permissible views of the evidence, the fact that the judge here adopts one. That's different from whether no reasonable person could reach the conclusion. That's absolutely right. In applying the clear error standard, you're not required to view the evidence in a way that is most favorable and ignore other evidence. But where there are two permissible views of the evidence, then it's not clear error. I'm confused. You say that we owe some deference to the district court judge's determination that this case was closed? Correct. And so what's our standard of review? What's the test? Is it abuse of discretion? You review the fact determination that it was a closed case. That determination is reviewed for clear error. The balancing of all of the nine read factors is reviewed for abuse of discretion under CYBOR and ODETX and other cases. Certainly, the district judge found that there were closed cases, a closed issue on infringement. Mr. Carlson belittled that. That's a fairly straightforward issue. The claim required that the bushing have an outer diameter that's sized to be slightly greater than the inner diameter of the tubing that goes into it. And the testimony of trial was that what that requires is what's called in the art a running and sliding fit. And to have a running and sliding fit, you need a certain clearance between the outer diameter of the tubing that goes into the bushing and the bushing's inner diameter. And we simply didn't have that. We had a bushing that's made of Teflon. And what the Teflon allows is to have tubing that has exactly the same outer diameter as the inner diameter of the bushing. So rather than being a gap, there was an exact identity. They were sized to be exactly the same, not sized to be slightly different as the patent requires. And we recognize that the jury found against this on that. But the judge heard all the evidence. And he came to the conclusion that most reasonable juries would have ruled on their favor on that issue. And in light of his views on closeness of the infringement issue and the invalidity issue, he found that there was a close case on willfulness as well. Because willfulness under the first prong of Seagate is tied to the closeness of the merits issue, where there's a reasonable defense on the merits. And that necessarily defeats willfulness under Seagate. What I heard during Mr. Carson's argument was an effort to completely rewrite the willfulness standard in a way, to my hearing, would completely eliminate the first prong of Seagate for willful infringement that occurs prior to the commencement of suit. And that's just not what Seagate is about. Under Seagate, there aren't two separate standards. The objective prong applies. The two prongs of Seagate apply to both portions of the willfulness period. Excuse me. I'm just listening. OK. Do you want to continue? Sure. Well, I don't have a, well, I don't want to impinge on Mr. Niehaus this time. So if I were to do that. You are adjourned. I'm sorry. Mr. Niehaus. Good morning. Thank you. My name is James Niehaus. I represent Norman Noble. Norman Noble did not get a free pass because of the indemnification clause. If Norman Noble had been given a free pass, there would have been no need for the district judge to apply the Reed factors to Noble's conduct. But if you review the opinion, that's exactly what the district judge did. Factor number one, copying. There's no allegation in the case that Cordes ever had access to spectrolytics invention. There's no allegation that Cordes copied the invention. The allegation was that Noble copied. The district court spent a page of its brief, of its opinion, analyzing and concluding that the evidence failed to show that Noble copied. Spectrolytics then spent five pages of its fact section, two pages of its argument, and a portion of its reply brief, arguing that the district court erred in how the district court applied that factor to Noble's conduct. By making that argument, they're conceding that the district court applied the Reed factors to Noble's conduct and did not give Noble a free pass. Can I get to the bottom of the indemnification point? Let's assume, for purposes of argument, that you're right as to all of the Reed factors except perhaps the two. What was the effect of the indemnification on the district court's assessment of Noble's satisfaction of the second element of Reed? Ultimately, Noble, the district court, weighed that factor against Noble. It would be an interesting issue. Where do we see that? Where do we see that? In the district court's opinion, where the district court said Reed factor number two weighed against the defendants. It was outweighed by that, but not to the point of assessing damages. No, but the district court did assess damages, $500,000, against the defendants. Against Noble, personally? Noble was indemnified. The indemnification is irrelevant to the award of damages. Damages were awarded against the defendants. Reed factor number two, the math was What do you do with an opinion that says under Reed factor two, without ever talking specifically about Noble, all the conversations about Cordes? He says, we find the second Reed factor weighs and damages. Right. And he said earlier, whenever I say Cordes, I mean Cordes and Noble. Correct. And then over on page eight of his opinion, when talking about size and financial condition, he says, under these circumstances, I see nothing particularly reprehensible about the fact that Noble didn't launch an independent investigation, but instead relied on Cordes. Because of the indemnification. Because of the indemnification. He said, Noble relied on Cordes' investigation. There's nothing reprehensible about that. It says Noble relied on Cordes' indemnification. So that it doesn't matter. No. He said that Noble relied on Cordes' investigation. Well, what evidence is there of that? Because there's no evidence in the record that Cordes did any investigation. So how can Noble rely on a pictionary saying? Well, there is evidence in the record that Cordes did an investigation because there's Mr. Colletti's letter, which is discussed extensively in Cordes' brief. And incredibly superficial and doesn't really say anything. So is that what you relied on? We relied to our peril. And it came back to haunt us. Because now we've been assessed $500,000 in enhanced damages because we relied on Cordes. You're saying that the enhancement is assessed against Noble, not against Cordes? It's assessed against both of them. It's assessed against the defendants. I don't understand. You've told us to ignore the indemnification. Or you're telling us that there is no indemnification? No, I'm not telling you to ignore the indemnification. Or I'm saying there is no indemnification. There is an indemnification clause. So it doesn't matter, does it, whether Noble was included or not in the willfulness? Well, I think it does matter. Why? It doesn't cost you anything. Well, um. As a matter of commercial ethics, we set that aside. I think the commercial ethics here really may not stand the light of day. But as far as the issue of indemnification, Noble has no risk, do they? Well, certainly Noble has risk when you rely solely on indemnification. Well, they have a risk if Cordes didn't have any money. That's correct. Is the indemnification clause enforceable in Ohio? The indemnification clause is enforceable in Ohio for damages. As to whether it's enforceable. If Cordes refuses to pay the award, and the award is sought from Noble, then it is unlikely in Ohio that Noble would be able to enforce the indemnification clause against Cordes. I don't understand how you can say that Noble was sanctioned for $500,000. The opinion itself has to be read as a whole. And at page 14 of the opinion, in the conclusion, it says, on balance, the court finds that Cordes should be penalized by an award of $500,000 in enhanced damages. Although this amount is small compared to Cordes' revenue, yada, yada, yada. That's the conclusion of the entire thing. I do see in the order it says, plaintiff speculates shall take enhanced damages amount of $500,000 for the defendant's willful infringement. But I don't see how that is attributable to Noble. You have to read the entire opinion together. And the opinion taken as a whole is clear that only Cordes is on the line for the $500,000. So I don't see how you conclude that Noble was somehow assessed a $500,000 in enhanced damages. Because in footnote 1, the court said Cordes means Cordes and Noble. And so there are times in the opinion where he used Cordes. There are times in the opinion where he used Cordes to refer to Noble. Without separately specifying Noble, there are times in the opinion where he used Cordes to mean both Cordes and Noble. We find that this sum adequately penalizes Cordes. That's at the top of page 14 of the opinion. Yes. And they have also determined that there is no need to enter a separate and additional award against Noble, is how I've read that opinion. Well, it also says in footnote 1 that Cordes agreed to identify Noble. Yes. It doesn't look as if the court thought that there was anything further outstanding that he needed to do or say. Except then he goes on in the opinion to evaluate read factor number 7, for example, remedial steps taken. He specifically references remedial steps taken by Noble to cease use of the little use they were still making of the infringing device shortly after trial. He went and evaluated each of the factors as to Noble. If Noble was getting a complete free pass, there was no need for him to do that, and yet that's what he did. Copying is only Noble's conduct that he's talking about, and yet that becomes a very important part of his opinion as well as their appeal. So he didn't give Noble a free pass because of the identification. OK. Any more questions? Any more questions? Thank you. Thank you, Mr. Niehaus. Mr. Carlson? With respect to Noble, we ask that the court separately assess punitive damages against Noble. And the court said at page 8 of its opinion of appendix, page 9, the court rejects that assessing a willfulness damage against Cordis and Noble. So there was willfulness damages order, but we all know as a practical matter what that means in the real world here. And it also means, we know, that Noble is not going to be paying any money. Now, are the vote in the banished drawings heavily liable for the $500,000? I don't know. But here we've got a $50 billion company who didn't even ask for a supersedious bond on this appeal. But that size just sets the prediction. We didn't talk earlier about whether or not the district court erred by taking into consideration the size of the royalty when it dialed up the punities. Didn't the district court sort of nod and say, well, I think the actual royalty was kind of high. And I believe we have a couple of cases that suggested that it's all right for a district court judge to dial down enhanced damages if he thought the actuals were dialed up. Well, actually, the royalty rate was not high. The royalty rate was about as low as you could go. This is in the mind of the judge. Yes. Our expert testified that 20% royalty would be realistic. I understand that. The judge didn't see it that way. Well, Your Honor, I mean, what would we do if the only issue here was the $500,000, which is both noble and courteous or maybe on the hook for it as a matter of law? And you say, well, the money just isn't a high enough number given what we know about the damages here. And the judge said, I just think the actual damages came in a little higher than I thought it should have been. I'm going to accept it. And I'm going to dial the impunities down on account of that. Well, I question. It might be a reversal error. I don't know. I don't know that there is a case. They cite the Reese case. Well, there's language. There's language. There's language there. It's their case that blesses what happened below. And if you're a good lawyer, you say, well, that has to have been holding because we sustained what the district court did. But it wasn't the holding in that case. And I think that if that were the issue, we would have to brief it quite a bit more than we did in this case. But to a certain extent, this goes to whether we should defer to the district court judge. And I think you should take into account the fact that from the very beginning, this district court judge didn't like this fact. And he said so. In the summary judgment ruling, where the issue is whether there are genuine issues of material fact, he said that Cordes is going to win. That's not an issue. It was totally gratuitous. During the course of the case, he continuously said that Cordes had a very good argument on obviousness. The fact is, he didn't like this patent. The jury totally disagreed. He did his job impeccably. But despite thinking Cordes was going to win, he didn't grant summary judgment. Despite thinking Cordes should have won, he didn't overturn the jury verdict. I agree. He did his job impeccably. He had his own preconceived notions about how the case should come out, because he sat there and heard the same evidence everyone else heard. But he left intact what the jury did at all times. Yes. I think that it has to be said that in the course of the trial, the judge makes hundreds of decisions. And we're not talking about a lot of errors here. What we're talking about is a decision on which he had discretion. And when he had discretion, he went the other way than what the jury did, because he felt from the very beginning that the case should go the other way. That's not an error of law. But it is an error of discretion, we believe. Because the closeness of the case was not an actual factor in this case, where the willfulness was based upon, and exclusively based upon, pre-suit conduct. The jury asked, when am I to decide the objective and subjective criteria? They were told, pre-suit. They asked about other periods. They were told, no, it's all pre-suit. What does it matter whether the case is tried? Could be close. Again, as I say, if you affirm what the district court judge did on that point, the district court judge is saying, both these parties laughed up. They made a terrible investigation. Their conduct pre-suit earns them liability for enhanced damages. So he's got an equation here. He's got nine factors in the equation. He says, there's one of them, both of them were, I said, they're both bad. And I said, I'm not making your reprehensibility, bad hat, white hat, black hat, or noble, because they were sort of like a wholly owned subsidiary. They were manufacturing, and they were relying on noble. But he says, I take all the other factors together, and I add them up, and one against each other is enough for a small amount. Well, the amount is. Why is that reversible? Well, what is reversible is not so much that point there. If he had not made other errors, and it's an issue of discretion, all I would be able to point to is his early issue on this patent that he expressed earlier. But what we're saying is he committed errors. He committed errors. The last time the error was clear, it was on read factor 2, because he said it doesn't count. I went back, and now he did read factor 2. And you're not arguing he made a mistake on read factor 2. Really? Well, we are in our brief. But my main point here is factor, we send it back this time, what are we telling him to do? Tell him this time to take a look under read factor 5 of whether the willfulness case was closed. That this issue about whether the case is tried was closed is not a read factor in this case where the willfulness was dependent upon pre-filing conduct. Now, I'm not saying you can't consider that fact. Once you consider it. I already did figure it. I figured it out under read factor 2. I'm sorry? I thought the district court judge was saying, I already figured that out on read factor 2. Well, you know, I can't tell you what was going through the mind of the judges when they put together the Reed case. I do know that what they purported to say was, I'm going to pull some cases from the prior case law that show ways that the court has decided whether to enhance damages. So they pulled all these cases together and they put them in some categories. Do they overlap? I don't know. They probably do. And maybe the judge found a little bit of overlap. But in the case of read factor 5, what that was, was willfulness closeness. They pulled cases that dealt with the closeness of the willfulness case. And again, that in some cases might be the same as the closeness of the case where the conduct is based upon post-filing willfulness. But here, it was exclusively based upon pre-filing. I do agree, though. So Reed's factors take into account post-filing conduct, right? Not very much. Not very much. Number three, infringers' behavior as a party to null litigation. Yeah, I think that factor does. Clearly, clearly. Yeah. Yeah, I think that a few of these factors might, I don't know why that becomes a factor. Why? Because the district court is deciding whether to exercise its discretion to punish someone. So it wants to look at the whole picture, not just whether a reasonable investigation was done upon that and you already have prevailed. But he wants to look at the whole picture of the litigation. Because you know what? Maybe they're really unscrupulous. Maybe they even intended to infringe what they thought was a valid patent. But lo and behold, during the case, it turns out patent validity actually was really shaky. And you know, maybe they really shouldn't be awarded a DCMF. Well, do you give them a pass on account of that? If they ignore the patent pre-filing and they are a willful infringer pre-filing, do you give them a pass because they are able to put together a case that looks close on the merits? I think that's wrong. Cases have rejected that. The Federal Circuit has rejected that. Crystal Semiconductor rejects that. All the factors taken together are what decide how much they should be punished. And the district court just agreed with you and punished them in this case. Awarded enhanced damages. Well, the amount. They don't like the amount. But that's when he decided it was appropriate to punish them, taking all the factors into account. But he committed an error with respect to re-factor 5. Re-factor 5 deals with the closeness of the wolf in this case. It doesn't deal with the closeness of the case it's tried. I can't change re-factor 5. Now, we can re-write Reed and we can say that despite the closeness of the case, the wolf in this case. I think we just don't read our cases the same way. Well, I don't find any case at all where on pre-filing conduct this court has ever considered whether the case that got tried was close. Because as I say, if you do that, you're going to encourage the- Why is he saying he did that? Well, he definitely did that. If you'll look at what he did at pages 10 and 11. What he said at the top of page 10, after Seagate, if the willfulness case is close, then the willful infringement case will necessarily also be close. Well, that's absolutely wrong. That's only true if the time frame and the evidence coincide, which, as you said in Seagate, would be the case on post-filing conduct. So his premise was that they are the same. Then on page 11 of his opinion- What was his error here? Are you arguing that he got the closeness of the willfulness case wrong or the closeness of the infringement case wrong? My argument is he didn't ever consider the closeness of the willfulness case. He purported to on the next page, but he didn't do that. He also then- Even if we were to consider only the closeness of the willfulness case, that's bottom of 10. Yes. Even if it was considered, he would find that it was close. Yes. And then he says why. He says it is close because they came up with a viable defense at trial. He doesn't say anything about what the evidence objective and subjective was about pre-filing willfulness. He goes right to the fact that the willfulness case was close because the case described was close, having said on the prior page that they're the same thing when they aren't with respect to pre-filing conduct. This is a huge distinction that he never grasped. He didn't grasp the jury's- You put that on when he says once the lawsuit began? Yes, absolutely. That's where he's discussing his willfulness case and whether it was close. He's not discussing the evidence that caused him to say that they didn't pay serious attention to spectrolytics until the lawsuit was filed. He's not getting into that. Can we move on? Do you have any more questions? Okay, thank you. I think we understand the issue. Thank you, Mr. Carlson. Thank you very much. Case is seconded. Thank you. The next case is number 2012, 1185, Trollo v. Wilson Sporting Goods. Mr. Bessler. Good morning. Please, the Court. My name is Art Teslak. I represent Jack Trollo in this case. In this case, the district court specifically limited its subject matter jurisdiction at the beginning of the case to the portion of Mr. Trollo's breach of contract count, namely to determine at the plaintiff's request whether certain tennis racket models that Wilson sold and for which it did not pay Mr. Trollo any royalties at all were in fact licensed articles under the Wilson-Trollo license agreement. In the beginning of the case, the Court also ordered that any question of damages in the case would be subject to arbitration under the dispute resolution mechanism clause in the party's license agreement. It also, on a Rule 12b-6 motion, dismissed Mr. Trollo's patent infringement count entirely. There were then several errors by the district court where it proceeded beyond the limited scope of its self-defined subject matter jurisdiction. I think we have the procedural progress of this case well in hand. I think you ought to jump to what you think are the reversible errors. The first reversible error occurred when the district court granted Wilson's motion for judgment as a matter of law at the close of Mr. Trollo's case at trial. It dismissed his breach of contract claims with respect to the five tennis racket models that were issued because he didn't prove patent infringement, but there was sufficient evidence in the record to support a breach of contract claim. If the Rule 50 motion had been evaluated as a breach of contract claim, there was sufficient evidence for the jury to find that Wilson breached the agreement. There were, from the very beginning of this case, Wilson set forth only very limited reasons... Does that mean that you agree that if this had been a patent infringement suit and not a breach of contract action, that he would not have proper and adequate proof to establish the elements of the claim like a head and a grip and the strings being horizontal or whatever? I don't believe so because... You don't? Go ahead. I think even if you look at it as a patent infringement case, he arguably had the evidence when you look at how the case unfolded in that prior to the Rule 50 motion, Wilson never produced anything in discovery on the first summary judgment motion or in the final pretrial order where it was contesting the fact that these were not tennis rackets. What does one have to prove? I mean, if the whole object here in front of the district court was to decide if there are any licensed articles, right? Yes. Now, a licensed article would be a tennis racket that does what? Does it meet the limitations of your claim? What does it do? It is a tennis racket that would meet the limitations of the claim. OK, let's stop right there. So, in order to be licensed, you know, for purposes of this trial, you have to decide whether a particular racket met the limitations of a claim, right? Correct. OK. And as I understand, what Wilson did was to, there were some examinations of a certain number of the rackets, and Wilson came back and said, as to at least some of these rackets, they don't meet the sort of IA limitation. There were five racket models at issue for a trial with the IA limitation only, and one was centered... I'm sort of trying to get at how the case unfolded when there were summary judgments before the trial. Yes. And my understanding, what happened was that Wilson came in and said, well, the burden is on Frollo to prove that there is a licensed article here. And that's in terms of the burden, right? Frollo's the plaintiff. Yeah, the plaintiff. The plaintiff has the burden to prove it up. And they said, well, they can't prove that it's a licensed article if there's some element or limitation in the claim that isn't met by a racket. So they serve up essentially one, maybe two limitations, IA and something else, is that rackets don't meet these limitations, right? Yes. And on the first summary judgment motion, the district court judge said, well, there are 42 rackets that are here in dispute, and 37 of them don't meet the IA limitation. And five of them, Frollo, the plaintiff, came in and said, well, we dispute the evidence that Wilson put up to say that the IA limitation is not present. And the judge agreed with him. He said, as to five rackets, there's a tribal issue of fact. Correct. Because Wilson's argument, which is, well, the limitation isn't there, failed as to the five. That's what got us to trial, correct? Correct. But in the process of getting there, the court was looking, and Wilson at least was looking, to say, Frollo has to come in here and show every limitation in the claims are met in order to produce a licensed article. And Wilson chose for summary judgment is to pick one or two limitations to final summary judgment. So where does that leave us when we get to trial? Now, wouldn't you still at trial have to come in and say, well, there was a tribal issue of fact on IA limitation for these five rackets? But here's why. I'm going to show you that all the other limitations are met. I think for breach of contract claim, you don't have to do that. The only reasons that Wilson proffered ever to Frollo. Stop and tell me, in the breach of contract case, what would you prove as to the existence or not of a licensed article? I think Wilson had waived any claim to anything other than those limited reasons, the IA. Well, but the district court judge asked you this exact question. Here is his trial transcript on this exact point. I approached both counsel, particularly you, Mr. Peslack, to say, was there anything in the record that could have shown such an agreement or waiver, and you candidly indicated that was not the case. And it was really by implication you were attempting to do that, and that's simply not sufficient. I don't think it was by implication. I think Wilson would have to produce evidence in a beginning case under Rule 26 that the other elements were not met. Why does Wilson have that burden of proof? It's the patentee, or in this case, the licensor, that has the burden of proving that this is a licensed article. Why does Wilson have to come forward? Why didn't you ask? Why didn't you ask him for admission about whether the thing had passed? Why didn't you ask an interrogatory along these lines? Anything at all that could have been arguably an admission. I agree. To get back to your theory, which I now understand, which is there's a difference between a contract case and an infringement case. Yes. So assume it was a contract case, and the contract case was somebody said, I'm going to sell you a pregnant brown cow. And the person comes back and says, I'm going to have to buy that because the cow isn't brown. Does that mean they waived the right later, and the district court judge says, well, no, it was brown, but that means they waived the right to challenge because the cow wasn't pregnant? I mean, you're telling me that on summary judgment the rules are different in patent cases than they are in contract cases? No. The summary judgment decision is clearly the district court engaged in a patent infringement analysis. But was the answer to Judge Moore's question that they marked the rackets with the Frohloff patent number? Is that where the supposed waiver arises? There were rackets marked with Mr. Frohloff's patent number that were produced during discovery. There were... But these five are not the marked ones. You've never alleged that these, as far as I can tell, these five were marked. You allege that the 14 were marked and the summary judgment and other things. There were... Am I wrong about that? You're correct. There's nothing in the record as to which 14 were marked. Well, there's nothing in the record to show that these five were marked. That's correct. These five, which is my picture on the Internet of the five rackets at issue, because there's nothing in the record that shows me the five rackets. So I just went on the Internet and looked for them by model number and found them. Correct. I mean, what happened during discovery was there were a lot of racket models at issue and Wilson could only produce 16 sample rackets, 14 of which were marked with Frohloff's patent number. And the issue that was raised on summary judgment, which is different than the final judgment issue, was marking estoppel, in that the 14 rackets were marked with Frohloff's patent number and this is an equitable estoppel argument that if you were taking rackets and putting someone's patent number on them as the licensee, you should be estopped from coming into court and claiming they're not licensed articles. And the Second Circuit had a decision where they discussed this in some detail and basically said that someone in Wilson's position should be relatively easy for them to explain away whether the marking was inadvertent or limited. And other than legal argument, there was no evidence presented by Wilson on summary judgment, the first summary judgment decision, that the marking, whether or not the marking was inadvertent. What you're talking about now, the summary judgment on the 14 rackets, that is distinct and different from the 5 that went to trial. That's correct. I just want to keep this straight. The 5 that went to trial was no evidence of marking on. The 14, for those you assert were marked and their response was, well, whether they're marked or not, they all have an IA that is equal to or less than 80 and they provided tons of test data, which is in the appendix on that point, correct? I wouldn't characterize it as tons of test data. It was limited to several rackets. All 14 of them, right? All the rackets. They only produced, they produced what were pilot run, they did tests on pilot runs prior to the manufacture of the rackets. That was the only evidence. Did Furlow put forth any evidence to suggest that their test results were somehow inaccurate? On the first summary judgment motion, he did, and this was rejected by the district court, in that he did a mathematical analysis called standard deviation analysis. Where he took the high and the low? Well, I think they took the high and the low, but what he did was find that when you move from a pilot run environment to actual production, you're going to get a deviation from the numbers you see in the limited pilot run testing. You mean the number could go higher than the high? They have a high number of max and a low number of min, and you're saying that the max is not actually the max? Did Mr. Furlow introduce some evidence that the number could go higher? He calculated what was called the standard deviation analysis. There were only 10 rackets tested. Well, there's a max and a min, right? The standard deviation is off a mean. I might not be remembering my probability theory exactly right, but my understanding is you start with a mean and then the standard deviation is you actually move away from the mean. But I don't understand the standard deviation as to be able to go above a max or below a min in a statistics analysis. He calculated it, and it came to be that there would have been some rackets that could have been produced with an IA greater than 81. Where is this evidence in the record? Because I could not find anything like what you're describing now in the appendix, and not even in your brief did you ever mention that such evidence exists. So where is this evidence? We didn't argue that point on appeal, but it was in the... Well, if it's not argued on appeal, how am I supposed to reverse the summary judgment on that basis? It was in the district court's opinion on summary judgment. So we can have five rackets as to which there was a trial, there was a directed verdict at the close of your case. And then we got the summary judgment motion which produced the five, right? The first summary judgment went from 42 rackets. The district court said as to 37, we failed to make the patent case show, and that produced the five. Now, with regard to that 37 that was remaining, you have an argument as to them, right? The argument is the patent marking is stoppable or the standard deviation analysis. I'd also like to... What standard deviation analysis that you didn't argue on appeal? It's not in our... It's on the summary judgment. But it's not in your brief anyway. It's not in the brief. Okay, so that's the 37. Now, the money in the case may be on the 299. That's a lot of rackets. Yes. There were 299 rackets that came into the case as a result of the foreign audit, right? Yes. Now, the district court from the second summary judgment, as I understand it, she said I have alternative grounds for granting the Wilson motion for summary judgment. One is I shouldn't be looking at the 299 rackets at all. They shouldn't be in the case. Wilson said they shouldn't be. And the trial judge agreed with that and said I'm going to, in essence, grant the summary judgment to say we shouldn't even be looking at the 299 rackets. They're not in the case. Then he said alternatively, alternatively, if I were to treat them as being in the case, then I would say that the plaintiff has failed to show the presence of the limitations of the claims in the rackets. So what is your argument to upset that second grant? Assume for purposes of argument, I believe that the trial judge was right that the 299 should have been out of there. That argument is that the second summary judgment motion was entirely beyond the jurisdiction of the district court in that the 299 racket models had been treated by Wilson as licensed articles. They paid royalties on all of them. The only question... Were they also marked? We don't know. There's no evidence as to whether they were marked. But Wilson paid royalties on them. The only question is that our auditor found that the royalties were short. And it was a question of damages which was excluded from the district court's jurisdiction by its initial order. These rackets, there should have never been an adjudication. Wilson never came and said these aren't licensed articles. They just moved for summary judgment. If I read Wilson's second summary judgment motion, they allege that 82 rackets out of the 299 failed to meet either the IA limitation or another limitation in the claim. That was the first notice that they gave Frollo that they didn't meet the limitations. That was their allegation. The district court judge did not address that in his second summary judgment decision, correct? That's correct. So what is the approximate difference between that which they ultimately agreed should have been paid, and has that been paid? In the beginning of the case, Wilson tendered payments to Frollo of approximately $800,000. Depending on how these foreign rackets and the other rackets fall out, there's still another $200,000 to $400,000 at issue. So that was tendered? That's not in dispute? No, no, there is money in dispute right now over the foreign rackets and the domestic rackets. You're saying that tender is no longer on the table? No, Wilson, what happened in the case was there was an audit and there was a disagreement between the parties. Wilson agreed some of the rackets were licensed articles and they should have paid on them, and they also agreed that they had shorted Mr. Frollo on royalties on some of them. They paid $699,000 on the domestic audit in, I believe it's 2007, and then they paid another $80,000 on the foreign audit in, I believe, 2008. That was my question. Approximately how much more is at stake? Approximately $200,000 to $300,000 at stake at this point. Okay. Let's hear from the other side. I just want to clarify, the $299,000, as I read the district court's second summary judgment, he said that they don't constitute licensed products. He found them as not licensed articles because Frollo hadn't tendered. I understand that, but so if we sustain that, then whatever money you may have already received on account of the foreign brackets, I guess you get to keep, but you don't get to take those $299,000 brackets back to the arbitrator. That's correct. And you contend that that's, because there's potentially quite a lot of money left at stake if those $299,000 brackets are held to be licensed products. That's correct. Okay, let's hear from Mr. Keene. Good afternoon. Jeffrey Keene from Keene Associates representing Wilson Sporting Goods. This case is, in essence, a contract dispute, but because the contract here specifically says that Wilson only owes licensees on licensed articles and the only thing that is a licensed article under Section 1.2 of the agreement is a tennis racket which is covered by one or more The court is required to undertake a patent analysis to determine if a racket meets the claims. Is each element of the claim in each asserted racket? Wilson originally moved to dismiss or stay the entire case and go to arbitration. Judge Chesler said, when I look at the contract, I think that the contract is silent on who decides what's a licensed article. So he retained that. That aspect isn't appealed, is it? It is not appealed. Let's get to the substance of the issue. Well, one issue has to do with... Why aren't you bound by the pretrial order? At page 26 of the pretrial order, there is Section 5, Defendant's Contested Facts. This is the order where you put in evidence everything that you all each agree is in dispute. Now, Mr. Frodo wouldn't have put in any evidence about heads or anything else because he's right to clearly have heads. But this is where you're supposed to put in any evidence on these five rackets which you dispute. Defendant's Contested Facts. And then I go through and look. You have a claim chart. The 372 patent has five relevant independent claims that are summarized below on page 28 of your pretrial order. You all put together those five claims and the only limitations you have any disputes on, for some of them are CP, but for all of them are the IA. At the moment of inertia in CP, I don't even remember what that stands for. But the point is, you didn't put forward in your claim chart anything else other than those limitations. It's all you discussed throughout. In fact, you have a sentence on page 31, number 19 on your pretrial order. Wilson's test data applied to each of the five remaining disputed rackets proves that each disputed racket falls outside the literal limitations. The physical properties of the rackets at issue have been tested by Wilson. Here's the data. And again, it's only the IA and the CP. You go through all of them. That's the only thing you include. You talk about the Seidel declaration, et cetera. But everything in this thing is only the IA and the CP. That's all you put forward in your contested facts for trial. So why did they have to introduce any evidence of a head or strings or anything else? Because it's their burden of proof to do so. No, you narrowed the issues for trial. That's the purpose of a pretrial order. And you had to put forth what you disputed. That's all you disputed. Yes, Your Honor. We did not have any of these rackets. The burden of finding these rackets... These are Wilson rackets. What do you mean you don't have them? Each one is a Wilson racket. We did not have these rackets. This is a license that had been in place since 1989. Some of these rackets had started sales long before the audit period. Wilson searched every racket that it had, all of its archives, every warehouse that it had, trying to locate the disputed rackets... Christian, how long did it take for us to find these online? Five minutes, maybe? Picture of each one of them right here. Guess what? They all have hands and grips and handles and everything else. And none of that evidence made it to trial. I'm astounded at saying that it's necessary to prove that a tennis racket is a handle. Those were some of the issues. The other issues at trial included... It does not pass the SMILE test. That's extraordinary. And netting. And netting in a plane. And netting with vertical and horizontal. There are rackets in the market that have lots of variances, and there was no proof ever entered. So what Mr. Frohlo was asking the court... But you didn't contest those issues. In the pretrial order, it is your obligation, as well as the plaintiff's, to put forth the issues that are to be tried. That's the purpose of the pretrial order. And you didn't put forth those issues. And we did not stipulate to any of those. We sought stipulations on a number of issues. Did you stipulate that a tennis racket has a handle? We did not stipulate to that. I should hope not. I mean, I did stipulate that the lights are on or off. But then what it suggested is that the court should take judicial notice that these are infringing items. No, the court should take judicial notice that a tennis racket has a handle. And it might even have strings. And what type of a grip does it have? And where is that grip located? That wasn't what the district judge... But those were all elements. No, no, no. Claim 20 does not require that. Claim 20 says having a grip portion suitable for a hand. Well, what would be the purpose of the grip on a tennis racket that should be suitable for the hand? Are you going to hold it by the strings to try and hit the ball? I was just flabbergasted at the audacity of the argument you made. If you had limited yourself just to the horizontal and vertical strings, since two of the five rackets at trial have some diagonal strings, the other three are clearly horizontal and vertical, if you had limited yourself to that, maybe I would have had more respect for your argument. But you overreached with the hand, the head, and the handle of the grip. It's nonsense. They were all elements of the patent. Each patent, to assert a claim against an article, it has always been the law that you must prove each element of the claim against the accused article. And they weren't here. The weight times the center of gravity elements were not here. What if we interpret your pretrial order as a concession? Because my understanding of pretrial orders is both sides are required to put forth the issues that need to be tried. And since you did not contest any of those facts, why don't you just interpret your pretrial order as a concession? The district court examined the pretrial order closely after we moved for a directive verdict and decided that there was no such concession and no such stipulation. And that is That would be abuse of discretion. But the district court who undertook the final pretrial order abused its discretion in interpreting whether or not this issue was conceded or not. Let's just say for the sake of this debate that we think it was an abuse of the district court's discretion to refuse to recognize that a tennis racket has a handle. Where does that leave your argument? I'm sorry, could you repeat that? When you tell us that we review on the standard of abuse of discretion the district court's conclusion that there was a failure of proof because it wasn't proved that a tennis racket has a handle. Let's say that we conclude that that is an abuse of discretion because all you have to do is open your eyes to the world and you see that a tennis racket has a handle. What other arguments other than this one do you want to bring to our attention? Well, there are the other elements that the string has a handle, strings, and a head. But there's only vertical and horizontal as opposed to diagonal. Two of the five patents appear not to have horizontal strings. I'd go more and point it out for this stuff. It was easy to find. Two of the rackets appear to have non-horizontal strings. I don't know how that cuts. Even in this appeal, the plaintiff has not argued at all that the elements of the claims have been met by the proof in the trial court. There is no argument in his brief. The articles were marked with a patent number. Actually, none of the articles at trial were marked with a patent number and that's clear in the record. None of the articles that were at trial had ever been paid on. There was no royalty ever paid on them. They were never recorded as royalty bearing. That's why we have this lawsuit, because the royalty was not paid. Actually, the lawsuit springs from an audit right. Since 1989, at the beginning of the license, Mr. Frollo had the right to audit all of the payments being made. He waited until the license was about to expire to exercise his audit right. That brought in three years of payments. Under the audit rights, we look at what were the payments made, what were the rackets, and he is to determine what licensed articles should be in the royalty pool and potentially which ones should not. Mr. Frollo, through his auditor, Joseph Gemini, decided that the pool of audited licensed articles should be every tennis racket weighing less than 10.9 ounces, not an element of the claims, or any Wilson racket that had the name Hammer, which is a Wilson trademark associated with it. That's how we developed this pool of what should be a licensed article. At the beginning of this, Wilson conceded that in this pool there were 128 rackets that we had underpaid upon and we tendered payment of close to $800,000. That's not at issue any longer. The only thing that became of issue is... I'd like to talk about the 299 rackets. My concern is that I'm not certain that summary judgment should have been granted on those. Not on the merits, not to resolve them on the merits. I think the district court would have been free to say too late in the process for me to allow them in. You'll have to bring a separate suit. But how is summary judgment on the merits with regard to these rackets justified? There was no proof whatsoever in response to Wilson's summary judgment motion. Weren't they marked? They were not marked. You paid royalties on all of these. There is nothing in the record as to which of those records had been paid upon and which had not. Mr. Frohlo set forth a declaration in which he claimed that you paid royalties on this. This is a question of summary judgment. You put forth no evidence contradicting that declaration. Question of fact, inference goes in favor of Mr. Frohlo. You paid royalties on these rackets. Why isn't that adequate for him to survive summary judgment? Well, number one, that doesn't create an estoppel. He did not argue estoppel. He didn't create the question of fact. It doesn't meet the limitations of the claim if there's no proof whatsoever. Wilson put forth an affidavit showing that... Yes, he was. Yes, Your Honor. He put forth evidence that these 299 rackets you have been paying royalties on, and now you've stopped, darn it, and he'd like you to keep paying. But that doesn't create proof of a racket meeting... That doesn't create proof that it's a licensed article. That's what he has to prove. It's a licensed article, and the fact that you've been paying royalties on 299 rackets isn't enough proof to survive summary judgment. When you put forth nothing at all about these 299, nothing at all that suggests, for example, that they meet the IA greater than 80 or any of that other stuff. We did, Your Honor. We had a declaration of William Severo indicating that these rackets did not meet those limitations. In fact... Wait, wait, you have... That's correct. We had no evidence on the rest of them. There was no evidence.